IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEVEN KUTCHERA,

                Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

                Defendant.[1]

OPINION and ORDER

20-cv-930-jdp

---

    This case arises out of a homeowner's policy that plaintiff Steven Kutchera bought from defendant State Farm Fire and Casualty Company. In 2020, Kutchera submitted a claim to State Farm under that policy, alleging that his garage collapsed because of the weight of ice and snow on the roof. State Farm denied the claim on the ground that Kutchera had been using the garage for business purposes, so it was excluded from coverage.

    Kutchera concedes that he was using his garage to repair cars for money during the relevant policy period. But he contends that the damage to his garage was unrelated to any car repair work that he was doing, so State Farm was prohibited from denying coverage under Wis. Stat. § 631.11(3), which applies when there is "a failure of a condition" or a "breach of a promissory warranty." State Farm contends that the business-use clause is an exclusion, not a warranty or a condition, so § 631.11(3) doesn't apply.

    Kutchera asserts claims for breach of contract, bad faith, and a violation of Wis. Stat. § 628.46 for untimely payment of an insurance claim. He moves for summary

---

[1] The parties agree that the complaint incorrectly identifies the defendant as "State Farm Insurance Companies," Dkt. 53, ¶ 2, so the court has amended the caption to reflect the correct name.

judgment on the breach of contract claim, Dkt. 18; State Farm moves for summary judgment on all three claims, Dkt. 42.[2]

The court will grant State Farm's motion for summary judgment and deny Kutchera's. The clause at issue is written as an exclusion, not a warranty or a condition. Kutchera argues for an expansive reading of the terms "warranty" and "condition" to encompass any use restriction on a property. Kutchera's view has some appeal, but it has not been adopted by the Wisconsin courts, it would significantly expand the scope of § 631.11(3), and it would encourage insureds to purchase the wrong policy for properties used as a business. For these reasons, and those discussed below, the court isn't persuaded that § 631.11(3) applies to the business-use clause. Kutchera's other arguments challenging the scope and validity of the business-use clause also fail. Accordingly, State Farm is entitled to summary judgment on the breach-of-contract claim. Kutchera's other claims are contingent on the success of his contract claim, so those claims fail as well.

BACKGROUND

The following facts are undisputed.

In spring 2014, Kutchera purchased real property with a garage that was approximately two miles from his residence in Three Lakes, Wisconsin. Kutchera purchased a homeowner's policy with an off-premises structures endorsement, which would afford coverage for the garage.

In fall 2014, Kutchera began running an automobile service center out of the garage. He contacted State Farm to buy an insurance policy for the garage, but State Farm told him

---

[2] Kutchera also moves for leave to file amended proposed findings of fact, Dkt. 55, which Kutchera provided with the motion. The court will grant that motion as unopposed.

that it didn't provide insurance for "automotive-type repair." Dkt. 63, ¶ 20. So Kutchera bought a business policy for "Kutchera LLC" from another insurance company, with an annual premium of $2,590.

In September 2017, Kutchera cancelled his business policy. He contacted State Farm again, stating that he had "basically closed" the service center and needed insurance on the garage for "personal use." *Id.*, ¶ 29. His homeowner's policy still included an off-premises structures endorsement, so no additional policy was needed.

State Farm issued Kutchera a homeowner's policy for March 2019 to March 2020. It included an off-premises structures endorsement with the following language:

> We also cover other structures owned by you, not located on the residence premises, used by you in connection with the residence premises.
>
>> a. This coverage does not apply to any structure:
>>
>>> (1) being used as a dwelling;
>>>
>>> (2) intended for use as a dwelling when originally built;
>>>
>>> (3) not permanently attached to or otherwise forming a part of the realty;
>>>
>>> (4) used either completely or in part for business purposes; or
>>>
>>> (5) rented or held for rental unless rented to a person who is a tenant of the dwelling or rented for use solely as a private garage.

The annual premium for the policy, including the endorsement, was $844.

In January 2020, Kutchera reported to State Farm that the roof on his garage had collapsed as a result of the weight of accumulated ice and snow. A claim adjuster visited the garage and observed that there was a hydraulic car lift inside. But Kutchera told the adjuster that he closed the garage in 2017.

3

State Farm later obtained tax records, invoices, and other records from Kutchera showing that he was still doing business out of the garage in 2018 and 2019. His ledger showed $22,179 in gross receipts for 2019, and most of that amount was for dates during the policy period. Dkt. 50-7. In May 2020, State Farm denied Kutchera's claim because its investigation had revealed business use of the garage.

Kutchera is a citizen of Wisconsin, State Farm is a citizen of Illinois, and the amount in controversy is more than $75,000 because Kutchera alleges that he incurred at least $91,000 in damages to his garage. So the court may exercise jurisdiction under 28 U.S.C. § 1332.

ANALYSIS

State Farm contends that it is entitled to summary judgment on Kutchera's breach-of-contract claim because the undisputed facts show that Kutchera used his garage during the policy period to service cars for money, so an exclusion in his homeowner's policy for structures used for business purposes applies. Kutchera's primary argument in response is that Wis. Stat. § 631.11(3) requires State Farm to show that any business use of his garage increased the risk of loss or contributed to the loss and that State Farm has failed to make that showing. Alternatively, Kutchera contends that the business-use clause is ambiguous and that the policy's coverage for other structures is illusory.

State Farm also contends that it has met the requirement in § 631.11(3) to show that Kutchera's business use increased the risk of loss or contributed to it. But the court need not consider that argument because the court concludes that § 631.11(3) doesn't apply to the business-use clause. The court rejects Kutchera's other arguments as well.

**A.  Does Wis. Stat. § 631.11(3) apply to the business-use clause?**

The portion of the policy at issue in this case is an endorsement for "other structures." The endorsement includes the following clause: "This coverage does not apply to any structure . . . used either completely or in part for business purposes." Dkt. 63, ¶ 33. The parties dispute whether the clause is governed by Wis. Stat. § 631.11(3), which provides:

> No failure of a condition prior to a loss and no breach of a promissory warranty constitutes grounds for rescission of, or affects an insurer's obligations under, an insurance policy unless it exists at the time of the loss and either increases the risk at the time of the loss or contributes to the loss.

The question is whether the clause is a "condition" or a "promissory warranty" within the meaning of the statute, as Kutchera contends, or simply an exclusion, as State Farm contends. Kutchera says that the clause is a condition or a warranty because it "requires Kutchera to refrain from business use of his garage after the policy takes effect or else he loses insurance coverage." Dkt. 54, at 2. State Farm says that the clause is an exclusion because it "does not extend coverage to structures used either completely or in part for business purposes." Dkt. 48, at 31–32.

As authorities cited by both parties indicate, the difference between a condition, a warranty, and an exclusion can be subtle and hazy. *See D & S Realty, Inc. v. Markel Ins. Co.*, 789 N.W.2d 1, 12 (2010) ("We have struggled with the chameleon-like terms 'conditions' and 'exclusions.'"); 17 *Williston on Contracts* § 49.111 (4th ed. 2015) ("Exclusions from or exceptions to coverage are different from warranties and conditions set forth in policies, although the two are often confused."). And this case shows how distinguishing the three terms can be difficult. The clause at issue is written as an exclusion: it states that the policy "does not apply" to structures used for business purposes. The clause isn't written as a warranty by the

5

insured, and it isn't written in conditional language. But it easily could be, without changing its core meaning. For example, the clause could say that other structures are covered, but if the structure is used for business purposes, coverage is forfeited. Or it could say that the insured represents that he will not use the structure for business purposes. A closer look at Wisconsin case law is required to understand how Wisconsin courts have defined these terms.

There is little case law interpreting § 631.11(3), but the statute is the most recent version of a law that goes back to 1907, see Laws of Wisconsin 1907, chapter 127, and the Wisconsin Supreme Court has indicated that the meaning of the terms hasn't changed and is the same as their common-law meaning. *Fox v. Cath. Knights Ins. Soc.*, 2003 WI 87, ¶¶ 27–29, 263 Wis. 2d 207, 225, 665 N.W.2d 181, 189. In this case, each side relies on different Wisconsin cases to support its understanding of the terms.

State Farm relies on *Bortz v. Merrimac Mutual Insurance Co.*, 92 Wis. 2d 865, 286 N.W.2d 16 (Ct. App. 1979), to show the difference between a condition and an exclusion. In that case, the court considered an insurance policy that included the following language:

> EXCLUSIONS SECTION II
>
> This policy does not apply:
>
> (g) under coverages A & B, to bodily injury to
>
> (2) any farm employee employed in violation of law as to age, if the occurrence arises out of any power driven machine other than an automobile, . . . .

*Id.* at 869. The parties in *Bortz* disputed whether the above language was an exclusion or a condition, and the court rejected the plaintiff's contention that a condition "is a broad term encompassing 'exclusions' and that an exclusion is but one type of condition." *Id.* at 870.

The court described an exclusion as follows:

> In an insurance policy, an exclusion is a provision which eliminates coverage where, were it not for the exclusion, coverage would have existed. An exclusion. . . serves the purpose of taking out persons or events otherwise included within the defined scope of coverage. . . . An exclusion limits the scope of coverage provided by the policy in the first place. An exclusion does not modify that coverage by suspension, restriction or voidance of coverage provided by the policy.

*Id.* at 871, 874. The court went on to contrast an exclusion from a condition:

> [T]he conditions provide for avoidance of the policy or coverage for a specific loss if a certain stipulated event occurs or the insured does or fails to do certain required things. Exceptions or exclusions define coverage limitations or expressly refuse to assume a specific hazard or risk. . . . A condition subsequent is to be distinguished from an exclusion from the coverage; the breach of the former is to terminate or suspend the insurance, while the effect of the latter is to declare that there never was insurance with respect to the excluded risk.

*Id.* at 871–72. Based on this description of exclusions and conditions, the court held that the provision at issue was written as an exclusion, not a condition.

As for the meaning of a promissory warranty, State Farm cites *Struebing v. American Insurance Company of Newark, New Jersey*, which defined the term as "a statement made therein by the insured, which is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true." 197 Wis. 487, 222 N.W. 831, 834 (1929) (internal quotations omitted). State Farm also cites *Moe v. Allemannia Fire Ins. Co. of Pittsburgh*, which considered the following clause: "Unless otherwise provided by agreement in writing added hereto this Company shall not be liable for loss or damage to any property insured hereunder while incumbered by a chattel mortgage." 209 Wis. 526, 244 N.W. 593, 593–94 (1932). The court held that the clause wasn't a promissory warranty because the insured did not "warrant" that the property would remain free from

7

incumbrance. *Id.* Rather, he "simply agreed that any incumbered property shall not be within the terms of the policy." *Id.*

The cases cited by State Farm provide significant support for its position. It is clear that the clause relating to business use isn't a statement by Kutchera that he won't use his garage for business use. And it doesn't "provide for avoidance of the policy or coverage for a specific loss if a certain stipulated event occurs or the insured does or fails to do certain required things." *Bortz*, 92 Wis. 2d at 871. Rather, the clause is framed as *Bortz* describes an exclusion: it "limits the scope of coverage," "tak[es] out . . . events otherwise included within the defined scope of coverage," and "expressly refuse[s] to assume a specific hazard or risk," namely a structure used for business purposes.

Kutchera doesn't discuss any of these cases in any of his three briefs, and he doesn't respond directly to State Farm's arguments based on those cases. But he says that State Farm's view of the meaning of "condition" and "promissory warranty" is too technical and relies on a false distinction between exclusions and conditions and warranties. He interprets § 631.11(3) as standing for the following proposition: "If the language in the insurance policy gives the insurance company the right to deny your claim after the claim happens because of something you did during the policy period, the insurance company has to show that what you did during the policy period had some relationship with the claim that you are making." Dkt. 54, at 15.

Kutchera relies on *Fox v. Catholic Knights Insurance Society* to support his view. 2003 WI 87, 263 Wis. 2d 207, 665 N.W.2d 181. The issue in that case was whether Wis. Stat. § 631.11(3) applies to both "conditions subsequent" (conditions occurring after the policy takes effect) and "conditions precedent" (conditions required before the policy takes effect). Looking at the text, structure, and history of § 631.11 and its predecessor statutes, the

8

court held that only conditions subsequent were covered. In the context of its analysis, the court quoted a comment to Wis JI–Civil 3105, which is based on § 631.11(3):

> Failures of condition and breach of promissory warranty are closely related and for most purposes can be treated as synonymous. Promissory warranties are those that require that something shall or shall not be done after the policy takes effect. Therefore, the above instruction is framed in terms of failure to have a night watchman on the premises and storage of inflammables so as to give examples of what breach of promissory warranty or condition might give rise to the "increase in risk" and "contribution to the loss" the statute speaks of.

*Fox*, 2003 WI 87, at ¶ 27. Relying on this quotation, Kutchera argues that the business-use clause is a promissory warranty because it "requires that something shall or shall not be done after the policy takes effect," namely, not use a structure for business purposes. Dkt. 19, at 3.

*Fox* provides Kutchera with little support because the supreme court wasn't purporting to provide a definition for "promissory warranty." Rather, it was quoting the jury instruction commentary to support the view that "§ 631.11(3) was intended to apply only to conditions after an effective policy is in place." *Fox*, 2003 WI 87, at ¶ 27. In another portion of the opinion, the court quoted with approval the definition of promissory warranty from *Black's Law Dictionary*: "A warranty that facts will continue to be as stated throughout the policy period, such that a failure of the warranty provides the insurer with a defense to a claim under the policy." *Fox*, 2003 WI 87, at ¶ 29. That definition is consistent with *Struebing* and supports State Farm's view.[3]

---

[3] Kutchera also relies on *Rural Mutual Insurance Company v. Secura Insurance*, No. 2015AP1864-FT, 2016 WL 8578141 (Wis. Ct. App. Feb. 3, 2016). But *Secura* is a summary disposition, which means that it may not be cited "as precedent or authority, except to support a claim of claim preclusion, issue preclusion, or the law of the case." Wis. Stat. § 809.23(3). So Kutchera should not have relied on that case.

The court acknowledges that distinguishing an exclusion from a warranty or a condition may be a somewhat technical exercise in some situations. For this reason, Kutchera asks the court to eschew the distinction for a more functional approach. But Wisconsin courts have made the distinction in cases such as *Struebing* and *Bortz*, so this court isn't entitled to disregard it. Moreover, business-use clauses like State Farm's are commonly referred to as "exclusions" rather than warranties or conditions in the case law. *See Ruff v. Graziano*, 220 Wis. 2d 513, 518, 583 N.W.2d 185, 187 (Ct. App. 1998) ("A business-pursuits exclusion, such as the one in this case, is a common exception to the broad coverage provided in homeowners and general liability insurance policies.").[4] Kutchera cites no case from Wisconsin or any other jurisdiction in which a court construed a business-use clause as a warranty or a condition.

If the court were to accept Kutchera's position, it would give business owners a strong incentive to purchase a homeowner's policy for a business to avoid the higher premiums of a business policy, with the hope that the insurer would be unable to prove that any future loss was business-related. That hurts insurers because they are deceived into issuing a policy that they wouldn't issue if they had all the facts, and it may also hurt business owners who find themselves without coverage when a loss *is* business-related. *Cf. Fox*, 2003 WI 87, at ¶ 33 (rejecting argument that § 631.11(3) applies to conditions precedent in part because of a concern about encouraging deception and giving insureds "no incentive to fulfill requirements" for obtaining coverage).

---

[4] *See also Casey v. Smith*, 2014 WI 20, ¶ 36, 353 Wis. 2d 354, 368, 846 N.W.2d 791, 798; *Williams v. State Farm Fire & Cas. Co.*, 180 Wis. 2d 221, 226–27, 509 N.W.2d 294, 296 (Ct. App. 1993); *Bartel v. Carey*, 127 Wis. 2d 310, 315–16, 379 N.W.2d 864, 867 (Ct. App. 1985); *Bertler v. Employers Ins. of Wausau*, 86 Wis. 2d 13, 17, 271 N.W.2d 603, 605 (1978).

Adopting Kutchera's position would also significantly change the law on business-use exclusions, requiring insurers in each instance to prove that the loss was related to the business use. Wis JI–Civil 3105 (placing burden on insurer to prove that failure of condition or breach of warranty increased the risk of loss or contributed to the loss). And that could often be a complicated exercise, as Kutchera's own arguments show. In one of his briefs, Kutchera responds to State Farm's suggestion that industrial heaters in his garage may have contributed to the snow and ice dam that caused the roof to collapse and that the heaters were part of Kutchera's business use. Kutchera writes:

> [State Farm] does not know if Kutchera went into the garage for personal use more or for business use more (recall that if Kutchera was in the garage working on his own cars, like the Subaru that was on the lift when the roof collapsed, and that personal use caused the ice dam to form, that remains a covered loss; State Farm would need to show that it was heat inside the structure from business use versus personal use to actually legitimately take the positions it takes). [State Farm] does not know what work Kutchera was doing, if any, in that garage.
>
> . . . [State Farm] does not know the last time Kutchera was in the garage prior to the collapse. [It] does not know whether Kutchera was at the garage for personal use or business use more. [It] does not know what the garage's heat was set at or whether it was on continuously.

Dkt. 54, at 11. It is exactly these types of disputes that State Farm was trying to avoid by excluding structures used for business purposes. In a situation like Kutchera's, involving a structure that had both personal and business uses, determining which use contributed to the loss could turn into an expensive and time-consuming investigation.

Generally, "federal courts sitting in diversity ought to be circumspect in expanding the law of a state beyond the boundaries established in the jurisprudence of the state." *King v. Damiron Corp.*, 113 F.3d 93, 97 (7th Cir. 1997) (internal quotation marks omitted). Taken to

11

its logical conclusion, Kutchera's view would permit an insured to use a homeowner's insurance policy to obtain coverage for a structure that was used entirely for business purposes, so long as any damage to the property was unrelated to the business use, such as a tree falling on the structure. The court isn't persuaded that Wisconsin courts would take the substantial step of allowing a business owner to convert a homeowner's policy into a business policy, so the court concludes that § 631.11(3) doesn't apply to business-use clauses.

**B.  Should the business-use exclusion apply in this case?**

Kutchera raises two other arguments in response to State Farm's motion for summary judgment on the breach-of-contract claim, but neither argument requires extended discussion. First, Kutchera argues that the business-use exclusion is "vague and ambiguous" because it doesn't say how much business use qualifies as being used "in part" for business purposes, so the exclusion should be "construed in favor of coverage." Exclusions are narrowly construed against the insurer if their effect is uncertain. *Cardinal v. Leader Nat. Ins. Co.*, 166 Wis. 2d 375, 382, 480 N.W.2d 1, 3 (1992). But any uncertainty over the meaning of "in part" doesn't help Kutchera. The relevant policy period was from March 2019 to January 2020 (when the roof collapsed), and Kutchera's own records show that he charged more than $22,000 of work in 2019. Dkt. 63, ¶ 154. Under any reasonable interpretation of the exclusion, that amount of work qualifies as using the garage "in part" for business purposes. *Cardinal*, 166 Wis. 2d at 382 (policy is interpreted "from the viewpoint of a reasonable person of ordinary intelligence in the position of the insured").

Second, Kutchera argues that coverage for other structures is "illusory" under the policy because "business" is defined as "any full-time or part-time activity." Dkt. 59, at 6. "Coverage is illusory when an insured cannot foresee any circumstances under which he or she would

12

collect under a particular policy provision." *Gillund v. Meridian Mut. Ins. Co.*, 2010 WI App 4, ¶19, 323 Wis. 2d 1, 778 N.W.2d 662. Kutchera doesn't meet that standard. To begin with, as Kutchera acknowledges, the exclusion includes five exceptions to what qualifies as a "business."[5] That alone is enough to defeat a contention that coverage is illusory. In any event, Kutchera misquotes the exclusion. It doesn't apply to any activity. Rather, it applies to an activity "of an economic nature" that provides a "source of income." Dkt. 63, ¶ 33. There are many situations in which homeowners would not use their garages for economic activity that generates income, so coverage is not illusory.

---

[5] The five express exceptions are:

> a. volunteer activities for a not-for-profit or non-profit organization or public agency for which no money is received other than payment of expenses;
>
> b. incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the insured;
>
> c. any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, lawn mowing, or paper delivery;
>
> d. the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of the actual electrical power usage by the residence premises in the 12-month period prior to the date of the loss; or
>
> e. ownership of the residence premises by the person or organization shown in the Declarations as Additional Insured.

Dkt. 63, ¶ 34.

CONCLUSION

Kutchera has raised interesting questions about the proper scope of Wis. Stat. § 631.11(3). But his view isn't supported by Wisconsin law and would significantly change the scope and application of business-use exclusions in Wisconsin. Kutchera's challenges to the exclusion itself aren't convincing. So the court will grant State Farm's motion for summary judgment on the breach-of-contract claim.

As for Kutchera's other claims, both are contingent on the success of his breach-of-contract claim. A bad-faith claim requires the plaintiff to show that there is no reasonable basis for the insurer to deny the insured's claim for benefits under the policy. *Dufour v. Progressive Classic Ins. Co.*, 2016 WI 59, ¶ 54, 370 Wis. 2d 313, 340, 881 N.W.2d 678, 691. Similarly, a claim under Wis. Stat. § 628.46 for untimely payment assumes a wrongful refusal to pay an insurance claim. So State Farm is entitled to summary judgment on those claims as well.

ORDER

IT IS ORDERED that:

1. Plaintiff Steven Kutchera's motion for leave to file amended proposed findings of fact, Dkt. 55, is GRANTED.

2. Kutchera's motion for summary judgment, Dkt. 18, is DENIED.

3. Defendant State Farm Fire and Family Casualty Company's motion for summary judgment, Dkt. 42, is GRANTED.

4. The clerk of court is directed to enter judgment in favor of State Farm and close this case.

Entered September 15, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge